UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  19-80339-ROSENBERG/REINHART

MARILYN SOTO ALDANA,

     Plaintiff,

v.

AUDIOLOGY DISTRIBUTION, LLC,
d/b/a HEARUSA

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON MOTION FOR ATTORNEY'S FEES [DE 59]

Pending before me is the Plaintiff's Motion for Attorney's Fees ("Motion").  DE 59.  Judge Rosenberg referred this matter to me for a Report and Recommendation.  DE 60.  I have reviewed the Motion (DE 59), the Response (DE 64), and the Reply (DE 67).  I have also reviewed the entirety of the docket and am personally familiar with this matter from having conducted a status conference on June 19, 2019, and a fairness hearing on July 10, 2019.  I am fully advised and this matter is ripe for decision.

In the Motion, Plaintiff's counsel seeks reimbursement of $13,960.00 based on 34.9 hours of work at $400.00 per hour.[1]  In response, Defendant asserts that the Court should award no fees.  For the reasons stated herein, I  RECOMMEND that the Motion be GRANTED IN PART AND DENIED IN PART, and that Plaintiff's counsel be awarded reasonable attorney's fees in the amount of $3675.00.

---

[1] By separate order, the Court already awarded Plaintiff $441.00 for costs.  DE 61.

**Procedural History**

Plaintiff filed this action on March 11, 2019.  Attached to the Complaint was an exhibit alleging that Plaintiff was owed $2,266.41 in unpaid wages plus an equal amount in liquidated damages, for a total claim of $4,532.81 (the "wage claim").  DE 1-3.  The exhibit did not contain an amount of accrued attorney's fees and costs.  *Id.*  At that point, Plaintiff's counsel had expended 3.5 hours on the file (corresponding to $1,400.00 in fees) and had incurred a filing fee of $441.00.  DE 59-1.[2]  The Clerk of Court issued the summons that same day.  DE 3.

*Initial Communications Between Counsel and Exchange of Settlement Offers*

It is not clear how Defendant learned of the Complaint, but on March 19, 2019, Defendant's counsel emailed Plaintiff's counsel to inform him that Defendant would accept service by mail.  DE 15-3 at 4.  A week later, on March 26, apparently having not received a response, defense counsel emailed Plaintiff's counsel again.  *Id.* at 3-4.  On March 28, Defendant's counsel sent another email, acknowledging that Defendant had been served, and stating that "I would like to schedule a phone conference to explore whether we are able to amicably resolve this matter before either party incurs unnecessary litigation expenses."  *Id.* at 3.  Unbeknownst to Defendant's counsel, on April 2, 2019, Plaintiff's counsel's spouse/firm manager passed away unexpectedly.

At 1:03 p.m. on April 3, defense counsel sent Plaintiff's counsel another email, stating that she had been trying to contact Plaintiff's counsel since March 19, but had "yet to receive the courtesy of a response."  DE 64-2 at 2.  She requested Plaintiff's agreement to a 15-day extension

---

[2] For discussion purposes, the Court will use the hours listed in Plaintiff's counsel's Billing Statement filed at DE 59-1, and will use the requested hourly rate of $400.00 per hour.  As discussed more fully below, by doing so, the Court does not find that all of the time listed, or the hourly rate requested, are reasonable.

to respond to the Complaint.  DE 64-2 at 2.  Additionally, defense counsel again expressed a desire "to explore early resolution of this case" and asked that counsel "schedule a phone call to discuss settlement [prior to April 19] in light of the nominal damages demanded."  *Id.*  Twelve minutes later, Plaintiff's counsel responded, in full, "My spouse died.  You can have 15 days." DE 15-3.  Judge Rosenberg granted Defendant's unopposed motion for extension of time, which made Defendant's response to the Complaint due on April 19.  DE 8.

There is no evidence in the record to suggest that counsel communicated again before April 17, which was two days before the deadline for Defendant to respond to the Complaint.  On April 17, at 11:58 a.m., Defendant conveyed an offer to settle the case for the full amount of the wage claim ($4,532.81) plus $1,000.00 in attorney's fees and costs. DE 64-3. The offer was "contingent upon Plaintiff's execution of a settlement agreement to include a release of any wage/overtime claims and dismissal of the pending lawsuit with prejudice."  *Id.*[3]  At that point, Plaintiff's counsel had expended 5 hours on the file.  DE 59-1.  At his requested billable rate, his accrued attorney's fees and costs at that point were $2,441.00, or $1,441.00 more than Defendant's settlement offer.

Plaintiff's counsel's billing records reflect that immediately after receiving the settlement offer he spent .4 hours discussing the settlement offer with his client and "built counter-offer."

---

[3] Defense counsel gratuitously added that Plaintiff's counsel was "obligated by the applicable rules of professional conduct to promptly convey this settlement offer to plaintiff."  DE 64-3. Three minutes later, at 12:01 p.m., Plaintiff's counsel responded, "It is obnoxious and unnecessary for you to lecture an opposing counsel on the rules of professional conduct while conveying a settlement offer.  You can simply convey the settlement offer without the lecture." DE 64-4 at 3.  Five minutes later, at 12:06 p.m., defense counsel responded, "No offense intended.  However, I have emailed you several times requesting the opportunity to discuss settlement and you have not responded.  Accordingly, I just wanted to make sure that our offer is communicated to Plaintiff since you do not tend to respond to my emails."  DE 64-4 at 2.

DE 59-1.  At 12:33 p.m., Plaintiff's counsel emailed Defendant's counsel, rejecting the settlement

offer and making a counteroffer.[4]  The counteroffer was:

1.  Defendant will pay Plaintiff $4532.81.

2.  Additionally, Defendant will pay Plaintiff's reasonable fees and costs.

3.  Once we have an enforceable settlement, I will confer with you in good faith to resolve Plaintiff's fees and costs without the Court's intervention.  If we are unable to resolve Plaintiff's fees and costs amicably, I'll seek the Court's determination of Plaintiff's reasonable fees and costs.

4.  Dismissal with prejudice conditioned on the Court's retention of jurisdiction to enforce this settlement and award Plaintiff's reasonable attorney's fees and costs.

5.  In the event that enforcement of this settlement is sought, the prevailing party shall be entitled to reasonable attorney's fees and costs.

DE 64-4 at 2.  In essence, Plaintiff's counsel proposed a bifurcated settlement whereby the client

would resolve the wage claim, but the attorney's fees and costs would be resolved separately by

negotiation or by Court order.  Plaintiff's counsel did not specify his then-accrued fees and costs,

so Defendant could not assess its potential financial exposure if it accepted the settlement.  In

fact, by now, Plaintiff's counsel had expended 5.9 hours (including time spent discussing the

settlement offer with his client, reading and responding to emails from Defendant's counsel, and

preparing the counter-offer) on the case.  Plaintiff's counsel's accrued fees were now $2,360.00.

Therefore, including the $441.00 filing fee, the parties were, at most, $1,801.00 apart.

Defendant's counsel did not know the amount of this gap, but Plaintiff's counsel did.

---

[4] Before communicating the counteroffer, Plaintiff's counsel first commented, "Your 'No offense intended' remark is a non-apology attempting to excuse your behavior.  You then attempt to justify your behavior by stating that I have not responded to prior emails, which were regarding service even though Defendant was served.  The fact that I did not respond to certain emails you previously sent in no way excuses your obnoxious lecturing to me of the rules of professional conduct.  I do not expect you would accept responsibility for your behavior, but I am responding to your attempt now to deflect your personal responsibility for your bad behavior."  DE 64-4 at 2.

The record does not reflect defense counsel specifically responding to the counteroffer at that time.   Notably, Defendant's counsel did not ask the obvious question: "What are your accrued fees and costs to date?"   Defense counsel also did not express any concern that Judge Rosenberg would reject a bifurcated settlement.

*Motion Practice Begins*

In the meantime, on March 22, 2019, Judge Rosenberg entered her Order of Court-Mandated Requirements in FLSA-Based Cases ("FLSA Order").  DE 5.  That Order required, *inter alia,* the Plaintiff to file a Statement of Claim within 21 days that included "all attorney's fees and costs incurred to date.  With respect to attorney's fees, counsel must provide the hourly rate sought and the number of hours expended by each person billing time."  *Id.* at 1.  The Order further stated, "Failure to comply with this Order may result in default, dismissal and/or sanctions."  *Id.* at 2.  Under this Order, the Statement of Claim was due by April 12.  Plaintiff did not timely file the required Statement of Claim.

On Friday, April 19, 2019, Defendant moved to dismiss the Complaint because Plaintiff had not provided a statement of claim that listed the attorney's fees and costs incurred to date, as required by the FLSA Order.  DE 9.  The Motion to Dismiss was 3 pages long and contained 6 numbered paragraphs.   It tracked the procedural history of the case, then noted "ADL is in the process of tendering to Plaintiff the full amount of Plaintiff's claimed damages (*i.e.* $4,532.81).  ADL expects that this payment will be delivered to Plaintiff within the next 3 to 5 business days.  Thus, Plaintiff's claim to overtime and liquidated damages will be paid in full and mooted upon delivery."  *Id.* ¶ 5.  As the sole legal basis for the motion, Defendant argued, "Because Plaintiff has failed to comply with the Court's Order that requires Plaintiff to provide a statement of claim disclosing all attorney's fees and costs incurred and because Plaintiff's counsel has refused to

negotiate resolution of this matter in good faith, which is the very spirit and intent of the Order, ADL requests that this Court dismiss this matter." *Id.* ¶ 6. The relief requested was either to dismiss the Complaint or to issue an Order to Show Cause why the Complaint should not be dismissed. *Id.* at 3. Plaintiff's response was due May 3.

On Tuesday, April 23, at 5:09 p.m., Plaintiff's counsel emailed defense counsel stating, "I'm moving for an enlargement of time nunc pro tunc through Monday April 29, 2019 to file Plaintiff's Statement of Claim. The reason, as I previously told you on April 3, is that my spouse passed away on April 2. Do you oppose?" DE 15-5 at 3. Defense counsel responded one hour later, at 6:08 p.m. The response stated, "I'm very sorry to hear about your spouse. No objection. Given your situation and the parties' efforts to resolve this litigation, would you agree to extend all current deadlines for an additional 30 days so that we can try to resolve this lone remaining issue, which I believe to be your attorney's fees?" *Id.* This proposal would have deferred the need for Plaintiff to respond to the Motion to Dismiss.

At 7:23 p.m., Plaintiff's counsel rejected the proposal to extend all deadlines for the litigation for 30 days. Instead, he asked Defendant to withdraw the motion to dismiss. His email to defense counsel stated:

> I dispute your characterization of the pending issues in this litigation, but I am not going to argue with you.
>
> I do not agree to extend the deadlines in this case for 30 more days. Plaintiff already agreed to extend the deadline for Defendant to respond to Plaintiff's Complaint 15 days. *See* Defendant's Unopposed Motion for Extension of Time to Respond to Plaintiff's Complaint [DE 7].
>
> On April 19, 2019, the extended deadline that Defendant's answer was due – rather than filing an answer to Plaintiff's Complaint, you instead filed Defendant's Motion to Dismiss Plaintiff's Complaint [DE 9].
>
> **Will Defendant agree to withdraw its motion to dismiss, DE 9?**"

*Id.* at 2-3 (emphasis and brackets in original).  Less than an hour later, at 8:15 p.m.,

defense counsel responded:

> While I am very sorry for your loss, I am stunned by your response and its failure to recognize and reciprocate professional courtesy.  We sought an extension of time to respond to the complaint in part because, given the damages amount at issue (less than $5000 as identified in **your** complaint), this matter is simply not worth litigating.  Thus, we attempted on multiple occasions to engage in settlement discussions with no response from your office (which is understandable given your circumstance).  It does not, however, make sense for the parties to incur significant attorney's fees if this matter can be resolved.  Thus, we sought an extension of time to respond to the complaint so that we could see whether we could resolve this matter with your office.  Our client then agreed to pay the full amount of damages and liquidated damages sought by your client in your complaint and we sought to resolve your attorney's fees.  Rather than work toward resolution (which you could have easily done in the time it took you to send the unprofessional emails you sent to Ms. Lundberg and myself), you, for unknown reasons, have refused to provide us with your attorney's fees and you failed to provide the court ordered statement of claim wherein you are required to disclose your attorneys' fees.  Unlike our office, you also failed to seek an extension of your deadline, a court ordered deadline at that.  You then request that we consent to your motion to extend your already past due deadline.  And after all that, you somehow claim we're delaying the case?  That simply does not add up.
>
> We do not intend to withdraw our motion to dismiss.  You can file your belated motion to extend the deadline and, in light of your spouse's passing, reflect that we do not oppose it.  We will, however, file a motion to extend the deadlines in this case (some of which you've already missed) as there is very little left to resolve in this matter.  I would rather all parties focus their energies on determining whether we can complete resolution of this matter, rather than sending unnecessary emails and engaging in work that will be useless should we be able to resolve this matter.

*Id.* at 2 (emphasis in original).  Defendant never moved to extend the deadlines or to stay the

litigation.

> *The Order to Show Cause*

Defendant's Motion to Dismiss put Judge Rosenberg on specific notice that Plaintiff had

not filed the required Statement of Claim.  On April 24, 2019, Judge Rosenberg entered an Order

to Show Cause why the Motion to Dismiss should not be granted.  DE 10.

Plaintiff filed her response to the Order to Show Cause on April 26, 2019.  DE 11.
Plaintiff's counsel recorded spending 2.0 hours preparing the Response to the Order to Show
Cause.  DE 59-1.  The Response first noted that Plaintiff's counsel's spouse and firm manager
had passed away unexpectedly on April 2, 2019.  *Id.* ¶ 2.  Plaintiff further asserted that the
Statement of Claim had already been filed as an exhibit to the Complaint.  *Id.* ¶ 1; s*ee* DE 1-3.  In
the Response, Plaintiff's counsel also complained that defense counsel had not conferred before
filing the Motion to Dismiss.  DE 11 ¶¶ 10, 14.  Plaintiff acknowledged the April 17 settlement
offer of full payment of the wage claim plus $1,000.00 for attorney's fees and costs. DE 11 ¶ 6.
Plaintiff asserted that she had made a counteroffer "to resolve her claims for the value of her
Statement of Claim plus reasonable attorney's fees and costs as provide for by the Fair Labor
Standards Act, 29 U.S.C. 216."  *Id.* ¶ 7.  Plaintiff noted that Defendant had not accepted the
counteroffer.  *Id.* ¶ 8.  She asserted that Defendant was employing a litigation strategy designed to
avoid paying Plaintiff's reasonable attorney's fees and  costs.  *Id.* ¶ 17. In a footnote, Plaintiff
asserted, "Defendant's sole basis for refusing to accept Plaintiff's April 17 settlement offer is its
unwillingness to agree to pay Plaintiff's reasonable attorney's fees and costs.  Upon acceptance of
Plaintiff's settlement offer, Plaintiff would then confer [with] Defendant to attempt to amicably
resolve Plaintiff's reasonable fees and costs without Court intervention.  If the parties were unable
to resolve Plaintiff's fees and costs, Plaintiff would have filed a motion for attorney's fee and
costs and the Court would have determined those amounts."  *Id.* at 2, n.2.

*Motion Practice Continues*

On April 29, 2019, Plaintiff filed her opposition to the Motion to Dismiss, which included
a request for an enlargement of time to file the Statement of Claim *nunc pro tunc.*  DE 12.
Plaintiff's counsel recorded spending 5.8 hours on the Response.  DE 59-1.   The certificate of

conferral accurately noted that defense counsel had said that Defendant did not oppose the motion for enlargement of time. DE 12 at 11. The sole substantive issue raised by the Motion to Dismiss was why Plaintiff had not timely filed the Statement of Claim. Plaintiff had already addressed this issue in her Response to the Order to Show Cause. The majority of the Response is a paragraph-by-paragraph response under a section captioned, "For record purposes, Plaintiff deems it necessary to specifically respond to each of the numbered paragraphs of Defendant's motion." *See Id.* at 2-11.

On April 29, at 4:05 p.m., Defendant filed a Reply in support of its Motion to Dismiss. DE 15. Ultimately, it argued, "ADL has requested nothing more than what it is entitled to receive under the Order, *i.e.,* Plaintiff's attorney's fees and costs incurred in this matter, including the hourly rate sought and the number of hours expended to the date of filing Plaintiff's statement of claim. In the time that Plaintiff has spent preparing the response to ADL's motion to dismiss, Plaintiff surely could have provided the required information regarding attorney's fees/costs so that the parties could work toward a complete resolution of this case rather than expending resources needlessly on motion practice." *Id.* ¶ 12. The Reply then conceded, "As to Plaintiff's request for additional time and leave to file her statement of claim, ADL's counsel agreed to the requested extension." *Id. ¶* 13. Plaintiff's counsel spent .5 hours reviewing the Reply. DE 59-1.

Despite having agreed to not oppose the motion for extension of time, and having conceded as much in a pleading filed at 4:05 p.m. on April 29, Defendant filed a Response in opposition to the Motion for Extension of Time 90 minutes later, at 5:32 p.m. DE 16. It stated, "ADL has already offered to resolve Plaintiff's overtime wage claim (without admission of liability) for the full amount of her purported damages. Plaintiff's counsel, however, has sought to increase his recovery by refusing to provide a summary of his attorney's fees/costs incurred to

date as required by the Court's order and by refusing to respond to ADL's settlement offer on attorney's fees/costs." DE 16 ¶ 3.  Defendant argued that the only thing left for Plaintiff's counsel to do was to identify his accrued fees and costs, so no extension of time was needed.  *Id. ¶* 4. Defendant further argued that Plaintiff's counsel should have provided this information as part of the April 17 correspondence about the settlement offer and counteroffer.  *Id.* ¶ 5.   Ultimately, Defendant asked the Court to deny the Motion for Extension of Time.  *Id.* at 2.  Apparently, this opposition to the Motion for Extension of Time was filed in error.

The Reply to the Response to the Motion for Extension of Time was not due until May 6. Nevertheless, rather than asking defense counsel to withdraw its opposition, Plaintiff filed a Reply the next day, on April 30 at 2:49 p.m., after spending 3.3 hours preparing the pleading.  DE 19; DE 59-1.  Plaintiff correctly noted that Defendant had changed its position on the pending motion, which Plaintiff asserted necessitated Plaintiff filing a Reply.   Once again, Plaintiff's counsel stated, "For record purposes, Plaintiff deems it necessary to specifically respond to each of the numbered paragraphs of Defendant's Response to Plaintiff's Motion for Enlargement *Nunc Pro* Tunc." DE 19 at 2.  Five of the seven pages of the Reply are spent responding paragraph-by-paragraph to the Response.  *Id.*  at 2-7.

*Statement of Claim is Filed*

On the evening of April 29, 2019, at 9:59 p.m., Plaintiff filed her Statement of Claim.  DE 17. The Statement of Claim was a one-paragraph pleading which stated in full "Pursuant to the Court's Order [DE 5], attached as <u>Exhibit A</u> is Plaintiff's Statement of Claim.  Plaintiff's counsel's fees to date are $6,360.00 for 15.9 hours at $400.00 per hour and costs to date are $441.00." *Id.* (emphasis in original).  The attachment was identical to what was attached to the

10

Complaint.  *C.f.* DE 1-3 and DE 17-1.[5]  The Statement of Claim asserted an entitlement to $2,266.40 in unpaid overtime wages plus an equal amount in liquidated damages, for a total claim of $4532.81.  DE 17-1.  It also stated that counsel had incurred $6,360.00 in fees to date (15.9 hours at $400.00 per hour) and costs of $441.00.  DE 17.

Having now been made aware of the amount of attorney's fees that Plaintiff's counsel claimed to have incurred (and reasonably deeming it to be the amount of fees demanded from Defendant), Defendant extended a new settlement offer on May 1.  In an email, Defendant's counsel stated, in full, "In response to Plaintiff's attorney's fee/costs demand, ADL rejects that demand as unreasonable and counters with an offer of $2000 in full and final settlement of Plaintiff's claim for attorney's fees/costs.  As previously agreed, ADL has offered and Plaintiff has accepted the sum of $4,532.80 in full and final settlement of any and all claims she may have against Defendant."  DE 64-5.

Two days later, on May 3, Plaintiff's counsel spent .5 hours reviewing the settlement offer and composing a response.  DE 59-1.  At 12:12 p.m., the response was emailed to Defendant's counsel.  The response first denied that Plaintiff had made a demand for a specific amount of attorney's fees and costs; rather, Plaintiff's counsel stated that he was only seeking an agreement that Defendant would pay reasonable fees and costs, which would be negotiated later.  DE 64-6 at 2.  After rehashing the chronology of settlement discussions, Plaintiff's counsel continued:

> [I]s Defendant now responding to Plaintiff's April 17 settlement offer?  Is Defendant rejecting Plaintiff's settlement offer?  Is Defendant rejecting Plaintiff's offer for Defendant to pay Plaintiff's **reasonable** attorney's fees and costs, which if the parties are unable to agree to through conferral, Plaintiff will file a motion for the Court to decide?"

---

[5] Plaintiff's counsel's billing statement shows .3 hours on April 29 to prepare the Notice of Filing Statement of Claim and the Notice of Compliance with the Order of Requirements.  It does not contain a separate time entry for preparing the Statement of Claim.  DE 59-1.

I want to confirm you are rejecting Plaintiff's April 17 settlement offer before I respond to what appears to be a counteroffer for the value of Plaintiff's Statement of Claim ($4,532.81) plus $2,000 as total payment for Plaintiff's fees and costs. As you know, a counteroffer operates as a rejection of prior offer.

Finally, Plaintiff's counsel rejected the assertion that Plaintiff had agreed to settle her merits claims against Defendant. *Id.* ("The parties have not agreed to any settlement."). In closing, Plaintiff's counsel stated, "Please let me know if Defendant will accept Plaintiff's April 17 settlement offer and agree to pay Plaintiff's reasonable fees and costs. If not, please be clear and confirm that Defendant is rejecting Plaintiff's April 17 settlement offer and refusing to pay Plaintiff's reasonable fees and costs.

Moving on to your last sentence, "As previously agreed, ADL has offered and Plaintiff has accepted the sum of $4,532.80 in full and final settlement of any and all claims she may have against ADL."

The parties have not agreed to a settlement. See the second paragraph of this email for a chronology of all settlement offers so far communicated in this case.

Please let me know if Defendant will accept Plaintiff's April 17 settlement offer and agree to pay Plaintiff's reasonable fees and costs. If not, please be clear and confirm that Defendant is rejecting Plaintiff's April 17 settlement offer and refusing to pay Plaintiff's reasonable fees and costs.

*Id.* at 2-3 (emphasis in original).

Also on Friday, May 3, defense counsel sent a check by Federal Express to Plaintiff's counsel's office. DE 64-7. The check was dated April 22, 2019, and was made payable to Plaintiff in the amount of $4,532.81. *Id.* at 3. The check was accompanied by a letter from Defendant's counsel to Plaintiff's counsel, which stated:

Defendant, Audiology Distribution, LLC ("ADL") denies any liability to Plaintiff and denies all claims asserted by her in her complaint. Nonetheless, and without admitting any liability, ADL hereby tenders HearUSA's check #730276420 for the full amount of Plaintiff's claim as stated in her Statement of Claim in the amount of $4,532.81. Plaintiff's claim has been fully satisfied and is now moot.

On May 1, 2019, ADL conveyed a settlement offer in the sum of $2,000.00 (without admitting any liability) in full and final satisfaction of Plaintiff's

> reasonable attorney's fees/costs.  We have yet to receive the courtesy of a response
> to that settlement offer.

DE 64-7 at 2.  The check was delivered to Plaintiff's counsel's office the following Monday, May

6, 2019, at 11:10 a.m.  It is not clear if this check was dispatched before Defense counsel received

Plaintiff's counsel's email on May 3.

On May 8, (after Judge Rosenberg accepted the belated Statement of Claim, DE 21)

Defendant filed a Response to the Statement of Claim.  DE 22.  Defendant first argued that the

wage claims were moot because full payment had been tendered.  *Id.* ¶ 1.  Defendant further

stated, "Plaintiff accepted the offer of $4,532.81 in resolution of her overtime wages plus

liquidated damages claims but rejected the amount of attorney's fees offered."  *Id.*  Defendant

further represented that a check in the amount of $4,532.81 had been delivered to Plaintiff's

counsel on May 6, 2019. *Id.*  Defendant also represented that it had made a settlement offer on

May 1 for "$2,000 in reasonable attorneys' fees/costs."  *Id.* ¶ 2.  Defendant asserted that it had

offered to resolve Plaintiff's demand for reasonable attorney's fees and costs; in fact, it stated,

"The only remaining issue since April 17, 2019, has been the amount of Plaintiff's reasonable

attorney's fees/costs which her counsel refuses to even discuss until 'we have an enforceable

settlement.'"  *Id.*

On May 22, at 11:27 a.m., Defendant sent a draft settlement agreement to Plaintiff.  DE

36-2 at 4.  Plaintiff's counsel spent .7 hours reviewing it; he emailed proposed changes to

Defendant's counsel at 9:42 p.m.  *Id.*  Plaintiff's draft contained the following language:

> Upon approval of this settlement by the Court, the parties shall confer in good
> faith to resolve Plaintiff's fees and costs incurred in this action.  If the parties are
> unable to resolve Plaintiff's fees and costs, Plaintiff shall file a motion for the
> Court to determine and award Plaintiff's reasonable fees and costs.

*Id.* at 3.  This provision was identical to what Plaintiff had proposed on April 17.  Defendant's counsel emailed a response the next day at 5:42 p.m.  This time, Defendant explained in detail why it objected to the proposed language.  *See* DE 36-1 at 2-3.  First, Defendant did not believe that Judge Rosenberg would accept a bifurcated settlement of this nature.  In support of that view, Defendant provided an order from a prior case with Judge Rosenberg.  *Id.* at 5-6.  Second, Defendant was concerned about having to incur additional expenses for fee litigation.  *Id.* at 2. Third, Defendant was concerned about how this provision could work logistically with a settlement in which the Plaintiff released all claims against the Defendant, including claims for attorney's fees.  *Id.* at 2-3.

The May 22 emails were, finally, a productive, substantive dialog about the impediments to settlement.  Unfortunately, that dialog did not continue in a timely fashion.

On May 22, 2019, Plaintiff moved to extend the mediation deadline.  DE 28.[6]  On May 24, Judge Rosenberg granted the Motion to extend the mediation deadline, but required the parties to file a status report apprising the Court of the status of the settlement negotiations by June 7, 2019. DE 29.

Inexplicably, even though a Court-ordered deadline for the status report was looming, there was no further communication between counsel prior to June 7.  On that day, having not

---

[6] The Motion stated, "On April 17, May 3, May 17, and May 21, Plaintiff has offered to settle this case for $4,532.81 plus reasonable fees and costs; if the parties are unable to resolve Plaintiff's fees and costs through conferral and without the Court's intervention, Plaintiff would file an appropriate motion for the Court to determine and award Plaintiff's reasonable fees and costs. DE 28 ¶ 1.  It continued, "Although Defendant agreed to pay Plaintiff $4,532.81, at no point has Defendant ever agreed to pay Plaintiff's reasonable fees and costs until today when Defendant's counsel sent a draft settlement agreement that included payment of Plaintiff's reasonable fees and costs."  *Id.* ¶ 2.  "Plaintiff's counsel has sent Defendant's counsel revisions to the settlement agreement and is optimistic that this case may be settling soon."  *Id.* ¶ 3.

spoken to opposing counsel, Defendant filed its status report at 5:20 p.m.  DE 30.  It noted that

settlement proposals had been exchanged and that Defendant had sent an email on May 22

explaining its concerns with resolving the attorney's fees and costs separately from the wage

claim.  DE 30 ¶ 9.  Defendant then stated, "Plaintiff's counsel has not responded to that e-mail nor

has he provided a good faith demand for reasonable attorney's fees/costs."  *Id.*

Shortly after Defendant filed its status report, Plaintiff's counsel finally responded to

Defendant's May 22 email.  On June 7 at 6:09 p.m, he sent an email stating, "I do not agree with

your analysis, but I am not interested in further conflict and argument with you.  Please send your

proposed revisions to my revisions to your proposed draft settlement agreement and I will take a

look at it."   DE 36-2 at 2.   Later that evening, at 8:37 p.m., Plaintiff's counsel emailed

Defendant's counsel an order from one of Judge Rosenberg's cases (*Salvador v. Brico*, No. 17-

61508) where she had approved a FLSA settlement that reserved the fee issue for the Court.  *Id.*

Plaintiff's counsel asked, "Please advise if you will reconsider your position."  *Id.*

Plaintiff filed its status report at 9:39 p.m.  DE 31.  Plaintiff agreed that the impediment to

settlement was Defendant's objection to bifurcation.  DE 31 ¶¶ 4-5.  Plaintiff cited and quoted the

*Salvador v. Brico* decision.  *Id.* ¶ 7.  Plaintiff's counsel stated, "This evening, Plaintiff's counsel

emailed [defense counsel] bringing the *Salvador* case to [defense counsel's] attention and is

hopeful that she will reconsider her position."  *Id.* ¶ 8.

Five days later, on June 12, after reviewing the status reports, Judge Rosenberg entered an

Order stating, in relevant part, "The Court will accept a Settlement Agreement that reserves the

issue of attorney fees and costs to be addressed through a motion after the Settlement Agreement

is approved.  Thus, by no later than noon (12:00 p.m.) on Friday, June 14, 2019, the parties shall

submit a Settlement Agreement for Court approval, complying with the Court's Order of

Requirements in FLSA cases."  DE 32.  Later that day, at 4:47 p.m., Plaintiff's counsel emailed Defendant's counsel and asked, "In light of the Court's Order, DE 32, please confirm that the last draft of the settlement agreement, which is the one I sent you back on May 22, 2019, is acceptable so we can begin coordinating with our respective clients for signing." *Id.* ¶ 4.  Two minutes later, Defendant responded, "No, cannot confirm.  I am reviewing the revised agreement again, will need to discuss with my client, and then will send it back to you for your consideration." *Id.* ¶ 5.

On June 14, 2019, at 11:28 a.m., Plaintiff filed a Notice Why Settlement Agreement Has Not Been Submitted.  DE 33.  Plaintiff asserted that no settlement agreement could be submitted because Defendant's counsel had neither agreed to the May 22 document nor provided proposed revisions. *Id.* ¶ 6.  Shortly thereafter, at 11:43 am., Defendant's counsel emailed a revised draft settlement agreement to Plaintiff's counsel.  DE 34-2 at 2.  An hour later, at 12:54 p.m., Plaintiff filed a Notice of Filing Emails and Defendant's Newly-Revised Settlement Agreement.  DE 34. Plaintiff noted that the revised proposed settlement agreement authorized the Court to award attorneys fees and costs to either party. *Id.* ¶3.  This provision was unacceptable to Plaintiff. *Id.* ¶5.  At 1:45 p.m., Plaintiff requested a telephonic status conference.  DE 35.  At 5:33 p.m., Defendant concurred in the request for a telephonic status conference.  DE 37.[7]  Judge Rosenberg referred the matter to me.  DE 38.

I held a telephonic status conference on June 19.  I then entered an Order memorializing the following rulings:

---

[7] In the interim, at 5:02 p.m. Defendant responded to the Notice Why Settlement Agreement Has Not Been Submitted.  DE 36.  Defendant conceded that it had not sent a revised proposed settlement language to Plaintiff until June 14. *Id.* ¶ 4.  Defendant asked the Court to grant additional time for the parties "to either reach agreement on the terms of a settlement agreement or to file appropriate motions for further relief." *Id.* at 4.

1. The parties have reached an agreement that resolves all of Plaintiff's claims. The agreement shall be reduced to writing, and must comply with the District Court's requirements for approval of settlement agreements. (*See* DE 5).

2. No agreement has been reached as to the issue of Plaintiff's counsel's request for attorney's fees. The parties shall submit supplemental briefing regarding this issue by no later than June 28, 2019.

3. Counsel shall meet and confer, and file a Notice by June 28, 2019, that provides the Court with proposed dates for a Fairness Hearing.

DE 44.  On June 28, Plaintiff moved to stay the June 28 deadline.  DE 45.  The basis for the motion was that the parties had not agreed on final language for the Settlement Agreement.  *Id.* at 1.  Because there was no final, approved settlement agreement, Plaintiff asserted that her right to fees had not yet accrued, so it was premature to brief the issue.  *Id.* at 2-3.  The certificate of conferral noted that Defendant's counsel opposed a stay, but proposed in the alternative that the fairness hearing be scheduled between July 10-12, and that any motions for attorney's fees be due by July 24.  *Id.* at 3.

I set the fairness hearing for July 10, 2019.  DE 48.  It was later rescheduled to July 22. DEs 49, 50.

On July 22, 2019, Plaintiff filed a copy of the executed Settlement Agreement.  DE 51-1. As it relates to attorney's fees, that Agreement stated, "The Parties have agreed to settle Plaintiff's claim for unpaid overtime wages, excluding any entitlement to an award to attorney's fees or costs.   Liability for and any amount of attorney's fees and costs remain before the Court, including any right to appeal the Court's order on any such motion(s)." *Id.* ¶ 8.

I conducted a fairness hearing on July 22, after which I recommended that the Settlement Agreement be approved.   DE 52.  My Paperless Report and Recommendation stated, "[T]he undersigned respectfully recommends that the District Court approve the FLSA settlement agreement and set briefing on the remaining issue of attorneys fees." *Id.*  Judge Rosenberg

adopted my recommendation on August 29.   DE 54.   Her Order approved the Settlement

Agreement, dismissed the action with prejudice, and retained jurisdiction "to enforce the terms of

the Settlement Agreement."   *Id.*

On October 28, 2019, Plaintiff's counsel filed his motion for attorney's fees.  DE 59.  In it

he seeks $13,960.00 based on 34.9 hours at $400.00 per hour.  Defendant filed a Response on

November 22.  DE 64.  Plaintiff filed a Reply on December 9.  DE 67.

## DISCUSSION

A plaintiff in a FLSA case is entitled to receive "a reasonable attorney's fee."  29 U.S.C. §

216(b).  As Judge Middlebrooks has explained:

> The starting point in any reasonable fee determination is the number of hours
> reasonably expended on the litigation multiplied by the reasonable hourly rate.
> *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The
> product of these two figures will provide a lodestar figure, from which the Court
> can then determine whether any portion of this lodestar figure should be adjusted
> upwards or downwards. *Id.* at 434, 103 S.Ct. 1933. To determine whether to
> adjust the lodestar figure, the Court may consider any of the twelve factors
> enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.
> 1974).  A downward adjustment may be required for "excessive, redundant, or
> otherwise unnecessary" hours. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.
>
> In determining the reasonable number of hours expended on the litigation, the
> Supreme Court requires fee applicants to exercise "billing judgment." *Hensley,*
> 461 U.S. at 434, 447, 103 S.Ct. 1933. To reflect proper billing judgment,
> attorneys "must exclude from their fee applications excessive, redundant or
> otherwise unnecessary [hours] ... which are hours that would be unreasonable to
> bill to a client and therefore to one's adversary irrespective of the skill, reputation
> or experience of counsel." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th
> Cir.1999) (quoting *Norman v. Housing Authority of City of Montgomery,* 836
> F.2d 1292, 1301 (11th Cir.1988)) (internal citations and quotation marks omitted).
>
> In determining the reasonable hourly rate, the Court looks for the prevailing
> market rate, which is the rate charged in the community by lawyers of reasonably
> comparable skill, experience and reputation for similar services. *Blum v. Stenson,*
> 465 U.S. 886, 895-96, n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *NAACP v.
> City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir.1987); *Gaines v. Dougherty
> County Bd. Of Education,* 775 F.2d 1565, 1571 (11th Cir.1985). "The decision
> regarding the appropriate hourly rate may be made either by analyzing the

affidavits submitted by counsel or, if this documentation is insufficient, by relying upon the court's expertise." *Norman,* 836 F.2d at 1303; *Avirgan v. Hull,* 705 F.Supp. 1544, 1549 (S.D.Fla.1989).

The applicant bears the burden of establishing entitlement to reasonable attorneys' fees, documenting the reasonable hours expended, and establishing reasonable hourly rates. *See ACLU of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999). Additionally, the Court is considered an expert in this area and is permitted to exercise its judgment regarding reasonable rates and hours.

*Azam-Qureshi v. The Colony Hotel, Inc.*, 540 F. Supp. 2d 1293, 1296–97 (S.D. Fla. 2008) (J. Middlebrooks).  The *Johnson* factors are:

1) the time and labor required;

2) the novelty and difficulty of the questions;

3) the skill requisite to perform the legal service properly;

4) the preclusion of other employment by the attorney due to the acceptance of the case;

5) the customary fee;

6) whether the fee is fixed or contingent;

7) time limitations imposed by the client or the circumstances;

8) the amount involved and the results obtained;

9) the experience, reputation and ability of the attorneys;

10) the "undesirability" of the case;

11) the nature and length of the professional relationship with the client; and

12) awards in similar cases.

*Menjivar v. Cu Copper, LLC,* No. 17-21687-CIV, 2017 WL 7794288, at *1 (S.D. Fla. July 24, 2017) (J. Altonaga) (citing *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1340 n.7 (11th Cir. 1999) (citation omitted)).

"Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended." *Perez v. Carey Int'l, Inc.,* 373 F. App'x 907, 910-11 (11th Cir. 2010) (per curiam) (citing *Hensley,* 461 U.S. at 434). For example, fees incurred to correct counsel's errors or to respond to an Order to Show Cause are not recoverable. *Mehta v. Iqlogg, Inc.,* No. 19-61823 (S.D. Fla. Oct. 11, 2019) at DE 15, p. 2 (J. Altman); *Leblanc v. USG7, LLC,* No. 12-CV-1235-Orl-41TBS, 2016 WL 1358529, at *2 (M.D. Fla. Apr. 6, 2016).

*Jurisdiction*

Defendant first argues that the Court lacks jurisdiction to consider a fee award because the case was dismissed with prejudice and without an express reservation of jurisdiction over the fee issue. DE 64. *See* DE 54 (order approving settlement). Defendant does not cite any authority to support the proposition that the Court must expressly reserve jurisdiction to consider a motion for statutory attorney's fees. "[E]ven in the settlement context, it remains the Court's duty to see that a 'reasonable attorney's fee' is paid by the Defendants." *Zegers v. Countrywide Mortg. Ventures, LLC,* 569 F. Supp. 2d 1259, 1261 (M.D. Fla. 2008) (citing 29 U.S.C. § 216(b)). In her Grant of Settlement Authority and Final Order of Dismissal, Judge Rosenberg "retain[ed] jurisdiction to enforce the terms of the Settlement Agreement." DE 54 ¶ 2. The Settlement Agreement clearly and unambiguously contemplated the Court retaining "jurisdiction to enforce the terms of the settlement and to determine any award of attorney's fees and costs to either Party." *Id.* ¶ 6; *See id.* ¶ 7 ("The Court shall retain jurisdiction to determine any claims for an award of attorney's fees or costs."). Having the Court decide the amount of fees was a material term of the settlement, which Plaintiff is entitled to enforce. Defendant's mootness argument is rejected.

*Merits*

Before turning to the merits of the fee request, it is helpful to note the framework for FLSA settlements.  Parties to an FLSA case can elect between two settlement strategies: (1) a global settlement of all of a defendant's monetary liability, including attorney's fees and costs, or (2) a bifurcated settlement in which the plaintiff's wage claim is resolved separately from the attorney's fee claim.  The bifurcated settlement approach further divides into two subsets: one where the parties negotiate the attorney's fees after agreeing on the wage claim; the other where the Court decides the reasonable fees and costs.

A plaintiff who pursues a bifurcated resolution theoretically can delay disclosing his or her accrued fees and costs until after the wage claim is settled (or even until the fee hearing before the Court).  Judge Rosenberg's FLSA Order limits this option.  Even if a plaintiff wants to pursue a bifurcated resolution, the plaintiff still must disclose the accrued fees and costs as part of the Court-ordered Statement of Claim.  That requirement is designed to created transparency and efficiency; early and inexpensive exchange of relevant information facilitates resolution of cases, which preserves the resources of the parties and the Court.  *See* Fed. R. Civ. P. 1.  Therefore, although a plaintiff can insist on bifurcation, refusing to timely disclose, negotiate, or demand a specific fee may later be deemed objectively unreasonable for purposes of determining an award under 29 U.S.C. § 216(b).

Here, once Defendant indicated a willingness to pay the wage claim in full, Plaintiff's counsel should have openly disclosed his accrued fees to date and demanded a particular amount

of reimbursement.[8]  Had that happened here, the parties would have known how far apart they were and could have negotiated accordingly.  If no agreement on fees could be reached, the parties could have notified Judge Rosenberg sooner to find out if she would have accepted a bifurcated settlement.  Then, the parties could have reduced their agreement to writing, had the settlement approved, had a fee hearing if necessary, and moved on.

Specifically, on April 17, 2019, after an initial settlement offer and counteroffer, the Defendant had agreed to pay the full amount of the Plaintiff's wage claim.  All that remained was to resolve the Plaintiff's claim for statutory attorney's fees.  On that issue, although Defendant did not know it, the parties were approximately $2,000.00 apart.  I find that if Defendant had known this amount was the gap, it would have immediately increased its settlement offer because the cost of further litigation dwarfed the amount needed to settle the case, even if 100% of the then-accrued fees were paid.  This finding is reinforced by that fact that, even after expending the fees to file and litigate the Motion to Dismiss, Defendants offered $2,000.00 for fees and costs on May 1.

In trying to understand how this case "went off the rails" one overriding concept is apparent; all counsel in this case failed to do the most fundamental part of effectively and professionally representing clients – communicate with each other.  The Federal Rules of Civil Procedure obligate parties to "secure the just, speedy, and inexpensive determination" of cases.  Fed. R. Civ. P. 1.  Noticeably absent from the record in this case is any evidence that counsel ever

---

[8] This demand reasonably could have exceeded the amount of accrued fees, to account for time that would need to be spent finalizing the settlement and obtaining approval from the client and the Court.

spoke to each other in person or by phone.  Communications occurred by email, often after business hours, and often without adequate time for reflection.[9]

As a result, the parties did not timely address issues or present them to the Court for resolution.  For example, it was not until May 22, 2019, that defense counsel first expressed concern about Judge Rosenberg accepting a bifurcated settlement, over one month after Plaintiff first requested a bifurcated settlement.  The issue was not brought to the Court's attention until June 7.  In the interim, the parties did not communicate to try to resolve this issue.  Once notified, Judge Rosenberg immediately clarified that should would accept such a settlement.  It is particularly troubling that no communications *of any kind* occurred between counsel from May 22 to June 7, even though Judge Rosenberg had ordered the parties to submit a report on the status of the settlement.  As a result of this kind of failed communication, almost three months of needless litigation ensued.

One example of wasteful litigation was Defendant's filing of the Motion to Dismiss in lieu of an Answer.  First, even if Defendant believed it was entitled to dismissal as a sanction for Plaintiff violating Judge Rosenberg's FLSA Order, the pleading that was filed did not substitute

---

[9] Given the tenor of some of the emails, counsel are reminded that since 2011, new members of the Florida Bar take an oath of civility: "To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications."  The Florida Bar's Rules of Professional Conduct prohibit knowingly, or through callous indifference, disparaging or humiliating another lawyer.  Fla. R. Prof. Conduct 4-8.4(d); *accord* Fla. R. Prof. Conduct 4-1.3 (commentary) ("The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect."); s*ee also* https://www-media.floridabar.org/uploads/2019/11/Professional_Electronic_Communications_Best_Practices.pdf (Florida Bar Best Practices for Professional Electronic Communicatin); https://www-media.floridabar.org/uploads/2019/10/ADA-2019-2021-Ideals-Goals-Handbook.pdf (Florida Bar Professionalism Handbook).

for filing an Answer to the Complaint.  Under Federal Rule of Civil Procedure 12, what tolls the filing of an Answer is "a motion *under this rule.*"  Fed. R. Civ. P. 12(a)(4) (emphasis added).  The authorized motions do not include a motion to dismiss for non-compliance with a case management order.  *See* Fed. R. Civ. P. 12(b)(1)-(7).  Therefore, by not filing an Answer or a proper motion, Defendant was in default after April 19.

Second, in addition to being procedurally erroneous, the Motion to Dismiss was unnecessary.  By April 19, Defendant had already committed to pay the entire wage claim.  All that remained was to resolve the attorney's fees and costs.  Understandably, Defendant wanted to know what Plaintiff's counsel was claiming to be his reasonable fees and costs.  Judge Rosenberg had already ordered Plaintiff to disclose this information.  So, Defendant had several options.  Defendant could have directly asked Plaintiff for this information (perhaps politely pointing out that Plaintiff had missed the deadline to comply with the FLSA Order.).  At low cost, it could have filed an answer to the three-page, 14 paragraph Complaint.[10]  Or, it could have sought an additional extension of time to file its Answer (either by consent or by contested motion).  Defendant chose the most incendiary and most expensive option:  a motion seeking to force the Plaintiff to comply with the FLSA Order or in the alternative to dismiss the Complaint as a sanction.  At the time Defendant filed this motion, Defendant knew that the reason Plaintiff's counsel had not complied with the FLSA Order was because his spouse had died.  Realistically, Defendant's counsel could not have believed that the Motion to Dismiss would be granted.

After receiving the Motion to Dismiss (but before preparing a written response), Plaintiff, quite reasonably, proposed to fix the problem and essentially give Defendant what it wanted.  On

---

[10] When Defendant eventually filed its Answer and Affirmative Defenses on May 17, the pleading (minus the certificate of service and signature block) was four pages long.  It admitted 11 of the 14 paragraphs of the Complaint.

April 23 (ten days before the Plaintiff's deadline to respond to the Motion to Dismiss), the parties agreed that Plaintiff could file an unopposed motion to respond to the FLSA Order *nunc pro tunc*. If that motion was granted, it would moot the Motion to Dismiss.  There was ample time to file that motion, wait for Judge Rosenberg to rule, then (if necessary) respond more fully to the Motion to Dismiss.  All parties should have expected that such a motion would be granted.

Nevertheless, rather than filing a simple unopposed motion for leave to respond to the FLSA Order *nunc pro tunc* that asserted the Motion to Dismiss was moot, Plaintiff's counsel expended 5.8 hours drafting and filing a response to the Motion to Dismiss.  This amount of time was not reasonable or necessary.

Additionally, on April 23, Defendant, quite reasonably, proposed that the parties extend all deadlines to allow negotiations to continue over the attorney's fees and costs.  Plaintiff's decision to oppose this request was not objectively reasonable, particularly given that the wage claim had been resolved.   Again, all parties should have expected that such a motion would be granted, but Defendant never filed it.

Another example of unnecessary litigation was Defendant erroneously filing a written objection after agreeing not to oppose Plaintiff's Motion for Extension of Time.  Plaintiff compounded this error by immediately spending 3.3 hours drafting a responsive pleading rather than simply asking Defendant to withdraw its opposition.  Plaintiff's counsel's time spent drafting and filing this Reply without first conferring with Defendant was objectively unreasonable.  Moreover, the content of the Reply went far beyond what was necessary to point out that Defendant had already filed a pleading saying it did not oppose the motion.  Therefore, even if drafting *a* Reply was necessary, the time spent on *this* Reply was excessive.

The case was also sidetracked by the insufficient communication about the process for resolving the attorney's fee claim.  From the beginning, Plaintiff was seeking a bifurcated settlement.  Apparently, Defendant did not believe that Judge Rosenberg would approve this form of settlement, but did not immediately tell that to Plaintiff.  Defendant wanted a global resolution, but did not directly ask Plaintiff's counsel for his accrued fees and costs.

Another problem was that Plaintiff's counsel took negotiating positions that were not objectively reasonable.  By April 17, 2019, at 12:33 p.m., the parties had exchanged settlement offers that mutually proposed full payment of the wage claim.  The only remaining material issue was how to resolve the attorney's fees.  Defendant had offered a specific amount ($1,000.00, later increased to $2,000.00).  Plaintiff proposed, "Once we have an enforceable settlement agreement, I will confer with you in good faith to resolve Plaintiff's fees and costs without Court intervention.  If we are unable to resolve Plaintiff's fees and costs amicably, I'll seek the Court's determination of Plaintiff's reasonable fees and costs."  Presumably, the reference to "an enforceable settlement agreement" meant a settlement agreement that had received Court approval as required by the FLSA.  It was objectively unreasonable for Plaintiff's counsel to insist on waiting for "an enforceable settlement agreement" before engaging in good faith negotiations about the attorney's fees; given that Defendant had agreed to pay the wage claim *in full*, Plaintiff's counsel could not reasonably have believed that there was any risk of the Court would not approve the settlement of the wage claim.  *See Lynn Foods, Inc. v. U.S. ex rel. U.S. Dep't of Labor,* 679 F.2d 1350, 1354-55 (11th Cir. 1982).

Similarly, Plaintiff filed a Statement of Claim on April 29 asserting that $6,360.00 in fees and $441.00 in costs had been accrued.  Defendant reasonably and logically treated the Statement of Claim as a demand for payment of the amounts listed.  In response, on May 1, Defendant

reiterated its willingness to pay the full wage claim and increased its settlement offer to $2,000.00 for fees and costs.  Defendant reasonably took the position that the wage claim was settled. Plaintiff replied on May 3.  Plaintiff's counsel's reply was objectively unreasonable.  He took that position that (1) he had not made a demand for a specific amount of fees and costs, (2) the wage claim was not settled, (3) there was confusion about whether Defendant was rejecting Plaintiff's prior proposal to defer fee negotiations until after the settlement was approved, and (4) Defendant was refusing to pay Plaintiff's reasonable fees and costs.   None of these positions were objectively reasonable.

First, objectively, Plaintiff's counsel had made a demand for fees.  He filed a Statement of Claim that listed his accrued fees to date.  The only logical inference was that Plaintiff sought reimbursement under the FLSA for at least this amount, as of the date of the Statement of Claim. The Statement of Claim listed all of Plaintiff's counsel's actual accrued fees as of April 29.  If, in fact, he was seeking less than the amount listed in the Statement of Claim, he needed to tell the Defendant.  Conversely, Plaintiff could have demanded additional fees to cover work necessary to conclude the case. Either way, it was objectively unreasonable for Plaintiff not to make a demand for a specific amount.

Second, Plaintiff's counsel assertion on May 3 that no settlement of the wage claim had been reached was objectively wrong.  On April 17, Defendant had agreed to pay the full amount of Plaintiff's wage claim.  On April 19, in its Motion to Dismiss, Defendant represented it was in the process of tendering a check.   Between April 19 and May 3, Plaintiff's counsel never instructed Defendant not to tender the payment.  Therefore, for Defendant to consider the wage claim settled was logical and appropriate.  Moreover, this conclusion was entirely consistent with Plaintiff's position that the parties must first agree on the wage claim, then separately agree on the

attorney's fees and costs.  The only way the Plaintiff had not settled her wage claim was if she was insisting on a global resolution, which Plaintiff's counsel repeatedly had rejected.  Even if Plaintiff's counsel subjectively was confused about whether the wage claim was settled, that confusion was objectively unreasonable.

Third, there should have been no question that Defendant had rejected Plaintiff's settlement proposal.  That proposal involved deferring negotiations over attorney's fees until after the Court approved the settlement of the wage claim.  By making a counteroffer that included a fixed amount of attorney's fees, Defendant clearly and unambiguously was rejecting Plaintiff's prior proposal.  Objectively, there was no confusion.

Fourth, Defendant was not refusing to pay reasonable fees and costs.  Defendant had offered $2,000.00 for fees and costs.  Defendant was not refusing to pay Plaintiff's reasonable fees and costs.  Not surprisingly, Defendant did not agree that $6,960.00 was a reasonable fee, so it was proposing an alternative in furtherance of negotiations.

At the end of the day, there is blame on both sides for why this case was not resolved more expeditiously.  But, the overwhelming preponderance falls on Plaintiff's counsel.  First, he was needlessly opaque about his accrued fees.  He categorically refused to negotiate a global settlement and never made a demand for a specific fee amount.  As a result, no dialogue occurred about his specific fees. As an attorney who has regularly handled FLSA cases for a decade, Plaintiff's counsel knew global settlements are the norm.  Similarly, by continually insisting that Defendants agree to pay an unspecified "reasonable attorney's fee" as part of the settlement, Plaintiff's counsel acted objectively unreasonably and thereby unnecessarily prolonged this litigation.

Second, Plaintiff's counsel repeatedly insisted that Defendant affirmatively agree to pay reasonable fees and costs.  As an experienced FLSA lawyer, Plaintiff's counsel should have known that Defendant could not refuse to pay reasonable fees and costs; they are required by statute.  It was objectively unreasonable to delay settlement by insisting that the opposing party agree to give something that is legally required.

Third, regrettably, it is abundantly clear from the record that Plaintiff's counsel was more concerned with preserving (and maximizing) his fees than he was with promptly obtaining relief for his client. *See* Fla. R. Prof. Conduct 4-1.7(a) and commentary ("The lawyer's own interest should not be permitted to have an adverse effect on representation of a client."); Fla. R. Prof. Conduct 4-1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client").  Plaintiff's counsel received a check for payment in full of the wage claim on May 6, 2019.  His Billing Statement shows that his next communication with his client was over a month later, on June 14, for .1 hour "to obtain power of attorney."  DE 59-1.  His next communication with the client was on June 25, 2019, for .2 hours, to "discuss case status."  *Id.*  Presumably the check tendered on May 6 was not released to the client until after Judge Rosenberg approved the settlement on August 29.

*Lodestar*

I now turn to the lodestar calculation.

1.  Reasonable Billing Rate

Plaintiff's counsel requests reimbursement at a billing rate of $400.00 per hour. Defendant has not contested this rate.  Plaintiff's counsel cites to cases where Courts previously have awarded him $350.00 per hour.  DE 59 at 2 n.2.  Within the last 90 days, on October 11, 2019, Judge Altman awarded Plaintiff's counsel $375.00 per hour.  *Mehta v. Iqlogg, Inc.,* No. 19-

61823 (S.D. Fla. Oct. 11, 2019) at DE 15, p. 2.  In his order, Judge Altman specifically rejected Plaintiff's counsel's request for $400.00 per hour.  I will adopt Judge Altman's analysis and award $375.00 per hour.

    2.  <u>Reasonable Number of Hours</u>

Plaintiff's counsel seeks reimbursement for 34.9 hours of work.  Twenty-nine of those hours occurred *after* the parties exchanged settlement offers on April 17, both of which proposed to pay Plaintiff's wage claim in full.  In assessing the reasonable number of hours, I break the case down into successive time periods.

    *a.   Time Prior to the Initial Exchange of Settlement Offers*

Plaintiff's counsel's billing records show that prior to the date when the Statement of Claim was due (April 12), he had expended 5 hours on the case, including an initial 2 hour client meeting, 1.5 hours preparing the Complaint and its exhibits, and .2 hours on the Defendant's unopposed Motion for Extension of Time to respond to the Complaint.  After receiving the settlement offer on April 17, he spent .9 hours reviewing it, discussing it with his client, and corresponding with opposing counsel.  Of that time, .2 hours was spent drafting and sending non-substantive emails.  *See supra* notes 3 & 4.   I find that 5.7 hours was an objectively reasonable amount of time for the work done through April 17.   At that point, the parties had agreed to settle the wage claim for the full amount demanded.   Spending 5.7 hours to research and file the lawsuit, then to achieve a full recovery for the client was reasonable.

    *b.   Time Related to Plaintiff's Failure to Comply with the FLSA Order*

All fees arising from Plaintiff's counsel's failure to timely file a Statement of Claim in response to the FLSA Order was unnecessary and therefore not reasonable or reimbursable.  Although it is understandable that counsel was distracted after his wife's death, these fees would

not have been incurred if he had complied with the deadlines in the FLSA Order or had timely

sought an extension of time.  I have no doubt that a timely request for extension of time would

have been granted.  *See* Fed. R. Civ. P. 6(b) (good cause standard for extension request made

before deadline expires).  These unnecessary fees include the litigation over the Motion to

Dismiss, the Motion for Extension of Time to File the Statement of Claim *nunc pro tunc,* and the

Response to the Order to Show Cause.[11]  Instead, I find reasonable the .3 hours on the Billing

Statement to prepare and serve the Statement of Claim, the Notice of Compliance with the FLSA

Order, and the Notice of Filing the Statement of Claim.[12]

Independently, for the reasons stated above, I find that virtually all of the fees accrued by

Plaintiff for these purposes were not objectively reasonable.

### c.  Time to Finalize Settlement Agreement

Once the wage claim was resolved, all that remained was to resolve Plaintiff's counsel's

claim for statutory attorney's fees and costs.  For the reasons stated above, Plaintiff's counsel's

actions during this process largely were objectively unreasonable.  Had there been the requisite

transparency and a timely demand for a specific amount of fees, this aspect of the claim, including

reducing the agreement to a final written document, likely could have been resolved in less than 2

hours.  I base that conclusion on my experience acting as a mediator in FLSA cases.

Nevertheless, because defense counsel was not prompt in expressing her good faith concern about

---

[11] As discussed above, Defendant generated some of this unnecessary litigation.  Nevertheless, Plaintiff's failure to timely file the Statement of Claim (or to seek an extension) was the but-for cause.

[12] I do not find reasonable the .2 hours on the Billing Statement on April 29 for "Sent email to O[pposing] C[ounsel] with Court Ordered Document Production."  DE 59-1.  The only item the Court had ordered produced was the Statement of Claim.  It should not have taken .2 hours to send an email attaching this three-page document, nor was this action necessary given that opposing counsel would receive a copy via CM/ECF.

whether Judge Rosenberg would accept a bifurcated settlement, I find that 3 hours is a reasonable time in which these parties should have finalized this settlement.

>    d.   *Time Related to Approving the Settlement*

On July 22, 2019, I held a telephonic fairness hearing that lasted 4 minutes.  DE 52. Plaintiff's Billing Statement does not reflect an entry for attending this hearing, but I take judicial notice that he was there.  I will award .1 hours for counsel's attendance.

On August 6, 2019, I entered my recommendation that the settlement be approved.  DE 52.  On August 29, Judge Rosenberg entered her order approving the settlement.  DE 54.  There were also a number of scheduling orders related to the fairness hearing.  DEs 47-51.  The Billing Statement requests .1 hours for reviewing each of these documents, or a total of .7 hours.  I find that a total of only .3 hours is reasonable for these tasks.

>    e.   *Time Related to Bill of Costs*

On September 27, 2019, Plaintiff filed her one-page Bill of Costs seeking $441.00 for the Clerk of Court's filing fee ($400.00) and the fee for service of the summons ($41.00).  DE 55. The Bill of Costs was accompanied by a 9-page memorandum of law consisting almost entirely of boilerplate legal citations.  DE 55-1.  Plaintiff's counsel requests reimbursement for .2 hours to prepare the Bill of Costs and .4 hours to prepare the legal memorandum.  Judge Rosenberg referred the Bill of Costs to me.  DE 56.  Defendant did not respond to the Bill of Costs, so I issued an Order to Show Cause why it should not be granted.  DE 57.  Defendant responded by stating that it did not oppose the Motion for Bill of Costs.  DE 58.  Judge Rosenberg then granted the Motion.  DE 61.

This vignette perfectly captures the problems with this case.  Had the parties talked, Plaintiff could have filed an unopposed motion for costs, which would have been summarily

granted.  Or, the parties could have simply complied with the Local Rules, which are designed to avoid this exact situation.  Local Rule 7.3(c) states, "Prior to filing the bill of costs [pursuant to 28 U.S.C. § 1920], the moving party shall confer with affected parties under the procedure outlined in S.D. Fla. L.R. 7.1(a)(3) in a good faith effort to resolve the items of costs being sought."  There is no evidence in this record that Plaintiff's counsel complied with this Rule.  Either way, the parties wasted the Court's time and delayed final resolution of the issue.

Plaintiff's counsel's request for .2 hours to prepare the Bill of Costs and .4 hours to prepare the legal memorandum is unreasonable.  Independently, counsel's failure to comply with the Local Rule warrants a reduction in the fee request.  I will award .2 hours for the preparation and filing of the Bill of Costs.  That is the reasonable amount of time that would have been required to call opposing counsel, learn that they did not oppose the costs request, and file an unopposed motion for $441 in costs.

> f.  *Time Related to Fee Petition*

Plaintiff's counsel requests .5 hours for preparing his fee petition.  I find that request to be reasonable.

3.  <u>Lodestar Adjustment</u>

In sum, I find the following billable time to be reasonable in this matter:

| | |
|---|---|
| Time through April 17 | 5.7 hours |
| Time to finalize settlement agreement | 3.0 hours |
| Time related to approving settlement | 0.4 hours |
| Time related to Bill of Costs | 0.2 hours |
| <u>Time related to Fee Petition</u> | <u>0.5 hours</u> |
| Total Reasonable Time Expended | 9.8 hours |

At an hourly rate of $375.00, the total lodestar is $3,675.00.

I do not find good cause to either increase or decrease this amount.  Defendant argues that Plaintiff's counsel's actions were a willful and bad faith attempt to artificially inflate his fees. The record before me does not substantiate that claim.  Although, for the reasons stated, I find much of Plaintiff's counsel's conduct to be misguided and unreasonable, I do not find evidence of bad faith.

## CONCLUSION

It is RECOMMENDED that Plaintiff's Motion for Attorney's Fees (DE 59) be GRANTED IN PART AND DENIED IN PART, and that Plaintiff's counsel be awarded $3,675.00 in fees.

**DONE and SUBMITTED** in Chambers at West Palm Beach, Florida, this 10th day of February, 2020.

BRUCE REINHART
United States Magistrate Judge